**SHELDON POLLOCK**
**LINDSAY S. MOILANEN**
**MICHAEL ELLIS**
**CHRISTOPHER M. COLORADO**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional**
**Office 100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**(212) 336-9143 (Colorado)**
**coloradoch@sec.gov**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**SIDDHI PATEL, AS ADMINISTRATOR OF THE ESTATE OF CHIRAYU VIJAY PATEL (DECEASED),**<br><br>**Defendant.** | **<u>COMPLAINT</u>**<br><br>**2:26-cv-13587 ( )**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), 100 Pearl Street, Suite 20-100, New York, NY 10004-2616, for its Complaint against Defendant Siddhi Patel, as Administrator of the Estate of Chirayu Vijay Patel

(Deceased) (the "Patel Estate" or "Defendant"), last known to be residing at 26 Arbor Circle, Edison, New Jersey 08837, alleges as follows:

## SUMMARY OF ALLEGATIONS

1. This action arises from a securities offering fraud that Chirayu Vijay Patel ("Patel") conducted from at least June 2020 to December 2025 (the "Relevant Period"), in which he misled over 40 investors about the performance and security of their investments and misappropriated investor funds to pay for his personal expenses.

2. In total, investors provided approximately $10 million to Patel between around July 2020 and November 2025. Of that amount, Patel misappropriated approximately $1.2 million for personal expenses, returned approximately $1.5 million to some investors through Ponzi-like payments, and lost over $7 million primarily through trading index and equity options and individual equities.

3. Throughout the scheme, Patel provided investors with false and misleading account statements and false rates of return, leading them to believe that he was generating profits when in fact he had lost or misappropriated nearly all of their money.

4. In or around June 2020, Patel began soliciting investments with the promise that investors would receive fixed returns of 6% per year. His early

trading of investor funds generated substantial profits, but starting in 2021 he shifted to sizeable equity options trades that produced mounting monthly mark-to-market losses, which he tried to recoup by making increasingly aggressive trades.

5. In or around October 2021, Patel began soliciting additional investments in a purported new offering that he described as having a higher risk-return profile and target returns of 20% per year. He pooled funds from both offerings together and continued making concentrated, higher risk trades that generated additional losses.

6. To sustain the scheme, Patel used investor funds to make Ponzi-like payments to earlier investors and misappropriated other investor funds for personal expenses, all while continuing to provide false account statements and rates of return, and soliciting new investments.

## VIOLATIONS

7. By virtue of the foregoing conduct and as alleged further herein, Patel has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Section 21(d) [15 U.S.C. §§ 78u(d)].

9. The Commission seeks a final judgment: (a) ordering the Patel Estate to disgorge ill-gotten gains that Patel received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and (b) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Patel, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails and wires in connection with the transactions, acts, practices, and courses of business alleged herein.

12. Venue lies in this District under 28 U.S.C. § 1391(b), Securities Act Section 22(a) [15 U.S.C. §77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. Patel resided in New Jersey and

was present in this District when he offered the securities and engaged in the conduct alleged herein, and many of the investors also resided in New Jersey at the time of their investments.

## DEFENDANT

13. The Patel Estate is the successor-in-interest to Patel, who died at age 41 on April 3, 2026, and was, at all relevant times, a resident of Edison, New Jersey. Siddhi Patel is the Administrator of the Patel Estate. Patel was employed as an analyst at a financial firm between 2006 and 2020. In 2020, Patel founded the Rakani Capital Target Return Fund LLC ("Rakani Fund") and Rakani Capital LLC ("Rakani Capital") and served as the Chief Executive Officer and ultimate owner of both entities.

## OTHER RELEVANT ENTITIES

14. **Rakani Fund** is a limited liability corporation incorporated in Delaware on May 22, 2020, with a principal place of business in Plainsboro, New Jersey. Patel wholly owned Rakani Capital, which served as Rakani Fund's manager.

15. **Rakani Capital** is a limited liability corporation incorporated in Delaware on May 22, 2020, with a principal place of business in Plainsboro, New Jersey. Rakani Capital wholly owned Rakani Fund.

## FACTS

## I. THE SECURITIES OFFERINGS

16. In May 2020, Patel formed the Rakani Fund and Rakani Capital and opened bank and securities trading accounts in their names.

17. He owned and controlled both entities and, around that time, began soliciting investments primarily from friends and family.

18. Patel offered investors quarterly payments equal to 6% annual interest, plus full repayment of principal within ten years (the "6% Notes Offering").

19. The offering materials Patel provided investors included a private placement memorandum ("PPM"), a promissory note, and a subscription agreement. The PPM described an offering of up to $100 million in Rakani Fund notes bearing 6% annual interest, paid quarterly, maturing in 2030, and redeemable by investors on 30 days' written notice.

20. Thirty-four investors, some investing jointly with a spouse, invested more than $4.7 million in the 6% Notes Offering.

21. In or around October 2021, Patel began soliciting investments in a second offering, in which investors purchased units in the Rakani Fund (the "Units Offering"). Patel marketed the Units Offering to earlier 6% Notes Offering

investors as carrying a higher return-risk profile and targeting annual returns of 20%.

22. Twenty-eight investors, some investing jointly with a spouse, invested more than $5.2 million in the Units Offering, and fifteen of them also invested in the 6% Notes Offering.

## II. PATEL POOLED INVESTOR FUNDS AND LOST THEM THROUGH TRADING

23. Although Patel represented the 6% Notes Offering and the Units Offering as distinct investments with different risk profiles and strategies, he commingled all funds from both offerings in a single brokerage account and traded them identically, regardless of which offering an investor had subscribed to.

24. Patel generated trading profits for a brief period in late 2020. He then shifted to a heavily options-based trading strategy. That strategy erased the earlier gains and produced mounting losses.

25. In January 2021 alone, the account's options positions showed mark-to-market losses of more than $778,000. In August 2021, Patel's trading in Nasdaq-100 index options lost over $700,000 in a single month. From June 2020 through December 2025, the account's total mark-to-market losses exceeded $7 million.

26. In March 2025, the custodian holding the trading account informed Patel it was closing the account following a compliance review. Patel transferred

the remaining funds to a new custodian and continued trading in a similar manner through the end of 2025. By December 2025, after additional losses of more than $300,000, approximately $423,000 in investor funds remained.

## III. PATEL'S FALSE AND MISLEADING STATEMENTS

27. Although the Rakani Fund was losing money through the Relevant Period, Patel provided investors with quarterly account statements and notices of interest payments falsely representing that their investments were secure and that the Fund was performing well, including at or above the 6% rate of return promised to the 6% Notes Offering investors.

28. Investors who elected to reinvest their interest received statements showing that the interest had been added to their principal, along with separate notices confirming the reinvestment.

29. The representations in the account statements and notices were false. At most quarter-ends, the Fund's assets were worth far less than what it owed investors, and there were insufficient returns to fund any investment payment, reinvested or otherwise.

30. The account statements for 6% Notes Offering investors also reported a "liquidation value"—original principal plus purported additions and accrued interest—representing the amount an investor would receive upon redemption.

31. That misrepresentation was misleading because, as Patel knew or recklessly disregarded from his control of the brokerage accounts and trading, the Fund generally did not have sufficient assets to pay investors that amount.

32. Beginning in at least 2022, Patel made false claims to existing and prospective investors to induce new and additional investment. In a July 2022 podcast he shared with investors, Patel claimed the Fund had a two-year track record of paying investors more than required and maintained an "equity buffer" to meet its obligations. At the time, the Fund's brokerage account held less than $500.

33. That fall, Patel gave prospective investors "Fact Sheets" reporting a "Size of Fund" of $7.4 million for the 6% Notes Offering and $5.6 million for the Units Offering. At the time, the same account held less than $500.

34. Beginning in 2024, Patel operated a website depicting investors' "Total Portfolio Value" rising from roughly $290,000 in 2022 to nearly $19 million by 2026, a trajectory with no basis given the Fund's actual trading losses.

35. The 6% Notes Offering PPM imposed two disclosure duties on Rakani Capital as Fund manager. First, it required Rakani Capital to obtain annual audited financial statements and make them available to investors. Second, it required the Fund to notify investors in writing within three business days whenever its liabilities exceeded its assets.

36. Patel obtained audited statements for 2020 through 2023 but gave investors only the 2020 statement. He withheld the statements for 2021 through 2023, which showed large net losses and, for 2022 and 2023, included going-concern warnings. He did not obtain any audited statements for 2024 or 2025. The unaudited statements the Fund prepared for those years also showed significant losses, and Patel never disclosed them.

37. Although the Fund's liabilities exceeded its assets throughout the Relevant Period, Patel never sent investors a shortfall notice.

38. Patel had sole access to and trading authority over the brokerage accounts holding investor funds. He alone prepared, or directed the preparation of, the account statements, interest notices, Fact Sheets, podcast statements, and website content described above. He therefore knew, or was reckless in not knowing, that each of these representations was false.

## IV. MISAPPROPRIATION AND PONZI-LIKE PAYMENTS

39. Investors gave Patel approximately $10 million between 2020 and 2025. Patel misappropriated about $1.2 million of that money for personal expenses. He used another $1.5 million to make Ponzi-like payments to earlier investors, paying them with money raised from later investors. He lost the remaining approximately $7 million through trading, as described above.

40. The offering documents allowed Rakani Capital only two kinds of compensation from the Fund. It could be reimbursed for certain operating expenses, and it could receive a performance incentive, but only if the Fund met specified performance thresholds. Neither Patel nor Rakani Capital ever calculated or requested a performance incentive.

41. Beyond those authorized payments for operating expenses, Patel spent approximately $1.2 million on personal expenses unrelated to running the Fund, including his personal credit card bills and online gambling losses. The offering documents did not allow him to use investor money this way, and he never disclosed to investors that he was doing it.

42. The Rakani Fund never earned the returns Patel promised. Instead, he took money from newer investors in both the 6% Notes Offering and the Units Offering and used it to pay earlier investors in both offerings. These Ponzi-like payments totaled about $1.5 million between 2020 and 2025. Patel never disclosed to investors that the payments they received came from other investors' money rather than from actual investment returns.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act**

43. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

44. Patel, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

45. By reason of the foregoing, Patel, directly or indirectly, singly or in concert, violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

46. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

47. Patel, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or

omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

48. By reason of the foregoing, Patel, directly or indirectly, singly or in concert, have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Ordering the Patel Estate to disgorge all ill-gotten gains Patel received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)]; and

### II.

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
October 19, 2026

/s/ Christopher M. Colorado
Sheldon Pollock
Lindsay Moilanen
Michael Ellis
Christopher M. Colorado
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
T: (212) 336-9143 (Colorado)
Email: coloradoch@sec.gov

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged against the Defendant in the foregoing Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: October 19, 2026

/s/ Christopher M. Colorado
Christopher M. Colorado
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-9143 (Colorado)
Email: coloradoch@sec.gov

**DESIGNATION OF AGENT FOR SERVICE**

Pursuant to Local Civil Rule 101.1(f), the undersigned hereby designates the United States Attorney's Office for the District of New Jersey to receive service of all notices or papers in this action at the following address:

David E. Dauenheimer
Deputy Chief, Health Care Fraud and Opioids Enforcement Unit
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2925
Email: david.dauenheimer2@usdoj.gov

Dated: October 19, 2026

SECURITIES AND EXCHANGE COMMISSION

/s/ Christopher M. Colorado
Christopher M. Colorado
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-9143 (Colorado)
Email: coloradoch@sec.gov